Scott, J.
Was it the intention of the testator that an interest in the fund now to be distributed should vest' absolutely in the objects of his bounty at his death?
' Or did he intend that such interest should be contingent only, during the life of his widow, and become vested at her death? The proper answer to these questions will determine the instructions to be given to the executor. And the intention of the testator is to be ascertained by a due consideration of all the language of the will bearing on that subject; and this is to be read in the light of the surrounding circumstances under which it was written.
We are to read the whole will, and. ascertain not only what the testator has said, but what he has forborne to say ;. and the construction given to any part of the will should conform to its general scope and purpose, as collected from the whole document.
It is to be observed that the testator gives no interest in the farm in question, or in its proceeds, to his brothers and sisters, or to the children of any of them, by way of direct devise or bequest. The gift is to be found only in the-direction to distribute the proceeds of its sale, and in the designation of the persons among whom distribution is to-be made. And it is clear that he did not intend the distributees should have any beneficial use or enjoyment of the farm, as land. He intended it to be used as a farm,, until the death of his widow. For the benefit of his estate,, his executors were to have the renting and management of it in their control, until his debts should all be discharged. So soon as this purpose should be accomplished, the use of' *293 "the farm was expressly given and devised to his widow •during her natural life.
At her death, the farm is again subjected to the control and disposal of the executors, for the purposes of the will.
They are not only empowered, but are unconditionally required to convert the farm into money, by selling it, •either at public or private sale. They are absolutely required to sell, though a limited discretion is given as to the manner of sale. The proceeds of such sale are to be distri'buted and apportioned by the executors, or.the survivor of them, in the manner, and between the parties, indicated by the will.
The thing to be distributed was money, not land. The conversion was necessarily to precede the distribution; and ■the gift is therefore to be regarded as a bequest of personalty, .and not as a devise of land. It makes no difference that the fund to be distributed is the proceeds of that which was land at the date of the will, or at the testator’s death. The bequest is nevertheless a legacy, and when vested in interest in the legatee, whatever may be the time for its payment, the law of succession in respect to it is to be found in the •statute, not of descent, but of distribution. A court of •equity will regard the subject-matter as having the new -character ■which the testator has impressed upon it by an unconditional order for its conversion. The,courts of England uniformly act upon this doctrine, and the same rule obtains in most of the states of this country, and has been frequently recognized in this state. Ferguson v. Stuart’s Ex’rs, 14 Ohio, 140; Collier v. Collier’s Ex’rs, 3 Ohio St. 369.
But we see no reason, in giving a construction to the will (that is, in ascertaining the intent of the testator), why we should regard the conversion of the farm into money as taking place at the death of the testator, or at :any time prior to the death of his widow. It is quite certain that the testator intended or contemplated no such ■conversion during her life. She was to have the use of the /farm, as such, during her natural life. It is, no doubt, true ■that where the testator intends the legacy shall vest in in *294 terest, at the time of his death, though the fund for its-payment is to arise from the sale of lands which are-directed not to be sold until the happening of a future event which must occur; in such case, for all the purposes of the succession, the conversion will be regarded as made-at the testator’s death. Yet no such rule can be applicable, when the question is solely, as here, when, and in whom,. did the testator intend that the legacy should vest. "We would not be aided in ascertaining his intention on this' subject by regarding the conversion as taking place at his death, when he clearly intended otherwise. Pie expressly directs the conversion to be made “ after the decease of my said wife,” and the question is: Who are the legatees among whom distribution is to be made? Are they the persons who, at the time of his death, shall sustain the relations and satisfy the description required of a distributeeby the will? Or did he intend that those only should share in his bounty who should sustain the required character at the time when the fund was to arise by actual conversion, that is to say, at the death of his wife? If the-former construction is to prevail, then the legacies in question became vested in interest at the testator’s death ; but upon the latter construction, the legacies were contingent, and did not vest absolutely till the death of his widow.
The distinction between vested and contingent legacies is, that in the case of the former, the contingency applies to the payment merely, in that of the latter, it applies to-the gift itself. This distinction is clearly and correctly stated by Judge Baldwin, in Reading v. Blackwell, Baldwin’s C. C. R. 174, where he says : “ It is not necessary to the vesting of a legacy that it be capable of present enjoyment in possession ; it is vested when the gift is immediate in interest of a present right of enjoyment to a person capable of future reception in possession, on the happening' of some event which is certain. It is contingent when the-gift is prospective to a contingency, when no present right to future enjoyment is given, or given to a person who has-not a present capacity to take and enjoy the thing given,. *295 let the contingency happen when it may. The present-gift and. the present capacity refer to the death of the testator when the will takes effect.
“ If the contingency is attached to the thing, or right given, or the person to take, the interest is contingent; if it is attached to the time when the thing or right is to be enjoyed, it is vested, the contingency referring merely to-the payment or division. In the former case it is in the nature of a condition precedent, which is the consideration of the gift; but in the latter, it is the mere postponement of payment of what is due by absolute right. This does-not make the legacy contingent unless the postponement arises from the situation of the legatee on account of the want of an existing present capacity to take and enjoy, or when the ascertainment of the person to take is referred to' a future period, and the right to take depends on his being in esse at that time.”
The legacies in this case are given solely by the fifth item of the will, and it contains no words of direct gift, to be understood as speaking in preesenti, at the death of the testator. The language is not, “ I give to my brothers and sisters and their heirs.” Such an expression would, no doubt, import a present gift, vesting in interest at the testator’s death, and the word “ heirs ” would be regarded as a word of limitation, not of purchase. Fairly v. Kline, 2 Pennington, 754; Brothers v. Cartwright, 2 Jones’ Cases in Equity, 118 ; Leading Cases in Equity, vol. 2, 801-2-3.
But here, as we have said, there is no gift, except as it is implied in an order to divide a fund to be created after the happening of a future event between parties who are not named, but are described as classes ■ of persons, and the word “heirs” is clearly used as descriptive of a portion of the persons between whom the division is to be made. The language of the testator is : “I devise,” (evidently meaning, “ I direct,”) “ that my executors, or the survivors of them, after the decease of my said wife, shall sell said farm either at public or private sale, and that the proceeds thereof be divided equally between my brothers and sisters *296 and their heirs — the children of any that may be dead to have the shares of their deceased parents.” -These words, “ any that may be dead,” import uncertainty in the mind of the testator. This was not an uncertainty as to which of his brothers and sisters would survive him, for the district court found as a fact, that the will was made only a day or two before the testator’s death, and in immediate expectation of that event, as is fairly to be inferred, and the testator well knew at the time that his sister Mary had died thirty years previously, leaving three children who were then in full, life, and that his four other brothers and sisters were all living. But he was speaking of the division of a fund, to be made after the death of his wife. She might live many years, and he could not know how many, or whether any of his brothers and sisters would survive her. As a matter of fact, she survived all of them. Read in the light of these circumstances, and in view of the explanation which the testator gives of the sense in which he uses the word “ heirs,” we think the direction as to the division of the funds admits of but one construction. After his wife’s Heath-the farm was to be sold, and the proceeds of sale to be divided equally between such of his brothers and sisters ns might than be living, and the issue, or lineal descendants ■of such brothers and sisters as might then be dead, such issue to take per stirpes, and not par capita. He intended that distribution should be made only among his kindred; and that those whom he calls “ heirs ” should take as his immediate legatees, and not as the heirs of legatees. The word “ heirs ” was not used in a strictly technical sense. If these legacies vested in interest, absolutely, at the testator’s death, then upon the subsequent death of a legatee, during the life of the widow, his legacy would' pass to his administrator or other personal representative. But this the testator did not intend. For, he has directed that the .share of any one who would, if living, be entitled to a part of the fund, shall, in the event of the previous death of such contingent legatee, be paid to his or 'her children. The gift itself, and not merely the time of payment, re *297 mained contingent, therefore, during the life of the widow. 'The persons entitled to the enjoyment of the fund could not be ascertained till her death.
Though we might well rest these views upon what we conceive to bo the dear expression of the testator’s intention, yet they are not without support from the authorities.
Batsford v. Kebbell was a case in which a testatrix gave to A the dividends of £500 stocks till he should attain the age of thirty-two ; at which time she directed her executors to transfer the principal to him ;• and it was held that the legacy of the principal did not vest till the age of-thirty-two. The Lord Chancellor (Loughborough) said: “Upon the cases, it appears that dividends are a distinct •subject of legacy, and capital stock another subject of legacy. In this case there is no gift but in the direction for pa}^ ment; and the direction for payment attaches only upon a person of the age of thirty-two. Therefore he does not fall within the description.” '3 "Vesey, 363.
The same was held in Hall v. Terry. In that case, M. T. being entitled to the reversion of an estate after the death •of his wife, devised it to C. D. and his heirs, so -as he should pay to his sister, Elizabeth Oades, the sum of one hundred ■pounds, within six months after the reversion came into his possession ; and devised the rest and residue of his personal •estate, all his debts and legacies before bequeathed being first deducted, to C. D. and another, whom he made his •executors. Elizabeth Oades died in the lifetime of the wife, and she also being now dead, the representative of Elizabeth Oades brought a bill against C. D. .to have the .£100 paid to him. It was held that the legatee having died before the time for raising the £100 was come, her representative was not entitled. The Lord Chancellor (Hardwicke) said: “ I am of opinion that the gift of the sum of money is only by the direction for the payment, and that it can not be said this is an original gift, so as to vest ■the legacy, and the payment only postponed to a future itime.” 1 Atk. 502.
So in Leake v. Robinson,'which.was the case of a gift of *298 real and personal property to trustees, upon trust, among other things, to apply the rents, dividends, etc., to the maintenance, etc., of all and every the children of W. R. R. until twenty-five respectively, then upon trust to assign and transfer to such children so attaining twenty-five, etc.; and one of the questions was, whether any interest in the property became vested in the children before attaining the age of twenty-five. The Master of the Rolls (Sir William Grant) held it did not, saying: “ I think none were to take vested interests before the specified period. The attainment of twenty-five is necessary to entitle any child to' claim a transfer. It is not the enjoyment that is postponed, for there is no antecedent gift, of -which the enjoyment could be postponed. The direction to pay is the gift,, and that gift is only to attach to children that shall attain^ twenty-five.” 2 Mer. R. 385.
The reasons on which these decisions rest apply in full force to this case. Here the direction for division is the-only gift. The division is not to be made till after the happening of a future event, and it is to be made between persons then living. Not only was the time of payment contingent, depending on the widow’s death, but the gift itself was contingent, depending on the survivorship of the presumptive legatees. Should any of them not survive, the-testator distinctly designates who shall take their shares, and become his legatees. The legacies, therefore, remained, contingent during the life of Ruth, the testator’s widow.
It follows that Sarah Johnson is entitled to no part of the fund, as heir at law of her late husband, the testator’s' brother Samuel, who died before the widow. And for the-same reason the will of Margaret LafFerty was inoperative-as to this fund, and her grandchildren are entitled only b> the share of their deceased mother.
The executor will be instructed accordingly.
Johnson, J., dissented.